

# Missouri Court of Appeals

## Southern District

### Division Two

STATE OF MISSOURI,                    )
                                      )
    Plaintiff-Respondent,         )
                                      )
v.                                    )       No. SD32968
                                      )
RAMONE E. HICKS,                      )       **Filed: Mar. 18, 2015**
                                      )
    Defendant-Appellant.          )


APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

Honorable J. Dan Conklin, Circuit Judge

**AFFIRMED**

A jury found Ramone E. Hicks ("Defendant") guilty of first-degree robbery, first-degree burglary, and armed criminal action. *See* sections 569.020, 569.160, and 571.015.[1] On appeal, Defendant claims: (1) the trial court plainly erred in denying his oral motion for continuance; and (2) the trial court erred in overruling his hearsay objection to a question about another witness's identification of Defendant. Finding no merit in either claim, we affirm.

---

[1] The record is inconsistent in its recitation of Defendant's middle initial. "Ramone J. Hicks" is used in some of his pretrial pleadings and in his motion for new trial. We will refer to Defendant as "Ramone E. Hicks," the name that appears in the information, transcript, judgment, notice of appeal, and Defendant's brief. All statutory references are to RSMo 2000. Unless otherwise indicated, all rule references are to Missouri Court Rules (2014).

**Facts Adduced at Trial**

Defendant does not challenge the sufficiency of the evidence supporting his convictions, and while we relay the facts in the light most favorable to the jury's verdicts, *State v. Wright*, 247 S.W.3d 161, 163 (Mo. App. S.D. 2008), we mention only the facts necessary to address Defendant's points.

Joseph Vazquez ("Joseph")[2] was home with his two daughters, Rose Vazquez ("Rose") and Jessica Vazquez ("Jessica"), when three individuals -- a Hispanic man, a white woman, and a black man (later identified as Defendant) -- broke into their home. The black man's face was obscured by a drawn-up black hoodie and a blue bandana that covered the lower portion of his face.

One of the items the robbers had taken was Joseph's cell phone. By "pinging" that stolen phone, police officers were able to determine that it was located at a Walmart store. Officers went to that location and took into custody a group of three people (including Defendant) in the parking lot who matched the description Joseph had given of his assailants. Joseph later identified the Hispanic man and the white female as two of the persons who had invaded his home. Rose identified Defendant as the third person involved based upon a design on his pants.

**Procedural Background**

Defendant was initially represented by a public defender ("trial counsel") until March of 2011, when Defendant retained private counsel. Defendant's private attorney conducted a few interviews, but he did not have the audio recordings of those interviews transcribed. In August 2012, trial counsel resumed the defense of the case.

---

[2] We refer to members of the Vazquez family by their first names in order to avoid confusion. No disrespect or familiarity is intended.

At a pretrial hearing held on the Friday before the Monday trial date in March 2013, trial counsel made an oral motion for continuance to allow him to depose the alleged victims "and possibly some officers[.]"  He explained that his motion was not submitted in writing because he had not had time to prepare a written motion the night before.  Trial counsel further explained that Defendant had been incarcerated in the Department of Corrections, and trial counsel had not been able to meet with him at the county jail until the previous day.  Trial counsel also told the court that Defendant had not had an "opportunity to listen to" the recordings of witnesses taken by private counsel.  Trial counsel stated that he had "questions . . . that weren't answered in the informal interviews."  Trial counsel said he "believe[d] there will be conflicting testimony[,]" but he gave no indication of the significance of any such testimony.  He also suggested that because the recordings had not been transcribed, he would have to rely on the recordings themselves to impeach the witnesses.

The prosecuting attorney did not agree to the continuance request, arguing that the reason depositions had not already been taken was because private counsel had chosen to use audiotaped informal interviews as a cost-effective alternative to depositions.  The trial court denied the oral motion for continuance without explication.

Just before the Monday trial commenced, trial counsel "reiterat[ed]" his oral motion for continuance, outlining the same reasons he had described the previous Friday.  Trial counsel indicated that "good" questions remained to be asked of the witnesses he wanted to depose, but he did not provide any description of the information those questions might elicit.  The State continued to oppose the request, and the trial court again denied the oral

motion for continuance, stating that it could not "see [its] way clear to continue the matter."

After accepting the jury's guilty verdicts, the trial court subsequently sentenced Defendant (a persistent offender) to serve consecutive, 20-year terms on each count. This appeal timely followed.

**Analysis**

*Point I – Oral Motion for Continuance*

"The decision to grant or deny a continuance is within the sound discretion of the trial court. A very strong showing is required to prove abuse of that discretion, with the party requesting the continuance bearing the burden of showing prejudice." ***State v. Schaal****,* 806 S.W.2d 659, 666 (Mo. banc 1991). Defendant acknowledges that his motion was not in writing as required by Rule 24.09, and he is requesting plain-error review under Rule 30.20 as he did not include the challenge in his motion for new trial.

Whether plain error review will be granted is within the appellate court's discretion. ***State v. Brown***, 438 S.W.3d 500, 507 (Mo. App. S.D. 2014).

> Errors are plain if they are evident, obvious, and clear. *State v. Hawthorne*, 74 S.W.3d 826, 829 (Mo. App. W.D. 2002). In the absence of such error, we should decline to exercise our discretion to review the claimed error under Rule 30.20. If we find plain error on the face of the claim, we may proceed, at our discretion, to the second step to consider whether or not a miscarriage of justice or manifest injustice will occur if the error is left uncorrected.

***State v. Rios***, 314 S.W.3d 414, 422 (Mo. App. W.D. 2010). Here, Defendant's request fails to satisfy the first step of demonstrating that an "evident, obvious, and clear" error occurred. ***Id.***

Rule 24.09 provides: "A motion for continuance shall set forth *in writing* the facts upon which the motion is based. The motion may be oral *if*: **(a)** The adverse party consents, or **(b)** The court finds good cause." (Emphasis added.) The record on appeal does not support either exception. Acknowledging this difficulty, Defendant argues that an oral motion is nonetheless sufficient if the trial court does not explicitly base its ruling on Rule 24.09 and the appellate court is able to comprehend the situation quickly, citing *Lee v. Kemna*, 534 U.S. 362 (2002).

In *Lee*, the defendant was prepared to present an alibi defense. *Id*. at 365. On the third day of trial, the alibi witnesses were set to testify, but they disappeared from the courthouse for unknown reasons. *Id*. Defense counsel orally moved to continue the case until the next morning so that he could relocate his missing alibi witnesses. *Id*. The trial judge denied the motion because it looked as if the witnesses had abandoned the defendant, and the judge already had other plans for the next day. *Id*. at 365-66. Our court upheld the denial of the requested continuance on the grounds that: (1) the motion was not in writing accompanied by an affidavit as then required by Rule 24.09; and (2) it also failed to comply with Rule 24.10, which sets forth what must be shown to obtain a continuance based on the absence of witnesses. *Id*. at 366.

The Supreme Court of the United States took the case on a request for writ review, and it held "that the Missouri Rules, as injected into this case by the state appellate court, did not constitute a state ground adequate to bar federal habeas review" because defense counsel, "[c]aught in the midst of a murder trial and unalerted to any procedural defect in his presentation," "could hardly be expected to divert his attention from the

5

proceedings rapidly unfolding in the courtroom and train, instead, on preparation of a written motion and affidavit." *Id*.

*Lee* is not dispositive for several reasons. First, trial counsel was not "[c]aught in the midst" of a trial by the sudden disappearance of his own witnesses. *Cf. id.* Trial counsel's oral motion was first presented at the Friday pretrial hearing with an explanation that it was being made orally only because counsel had not had time the previous evening to prepare a written motion. The oral motion was presented again three days later without any explanation as to why a written motion could not have been prepared at some point during the intervening weekend. The request was also not prompted by a surprise event; it was premised upon a desire to depose witnesses, including some who had already given recorded interviews, and trial counsel had been provided with the audio recordings of the recorded interviews six months before the trial began. As a result, trial counsel could hardly have been surprised by the content of those interviews on the eve of trial, and trial counsel made no claim that any "surprise" witnesses had surfaced.

Further, although trial counsel argued that he had not been able to meet with Defendant in person at the jail until the day before the Friday pretrial conference, trial counsel had previously represented Defendant in this matter, Defendant's case had been on the docket for over two years, and trial counsel had resumed his representation of Defendant at least six months before the trial began. Defendant does not claim that he had no ability to listen to the recorded interviews before the trial started on March 18, 2013, and even if he had not listened to them, inadequate preparation does not provide grounds for a continuance if counsel had an ample opportunity to prepare. *State v. Blades*, 928 S.W.2d 371, 373 (Mo. App. S.D. 1996).

Finally, while Defendant alleges that trial counsel's performance during trial was deficient, the trial court was provided no hint as to what deficiency might result if the continuance was denied. Trial counsel said he wanted to ask some "good" questions that had not been asked, but he did not indicate what the anticipated answers to those questions might be and how they might be helpful to the defense. Further, trial counsel did not suggest that he would be unable to impeach the State's witnesses based upon the information he already had; he simply maintained that the recordings had not been transcribed. *Cf.* **State v. Blankenship**, 830 S.W.2d 1, 9 (Mo. banc 1992) (no error in admitting a portion of a videotaped police interview of a witness that was inconsistent with the witness's trial testimony).

Given the limited information presented to the trial court, it did not err, let alone plainly err, in denying Defendant's oral motion for continuance. "In the absence of evident, obvious, and clear error, we should not proceed further with our plain error review." **State v. Flores**, 437 S.W.3d 779, 789 (Mo. App. W.D. 2014). Point I fails.

*Point II – Alleged Hearsay Regarding Identification of Defendant*

Defendant's second point alleges the trial court erred when it overruled Defendant's objection to testimony from Joseph that Rose had recognized and pointed out a design on Defendant's jeans when the family identified the suspects at Walmart. Defendant argues that the testimony was hearsay, not falling within any exception, and that he was harmed because the challenged testimony improperly bolstered other testimony given by Joseph and Rose.

> A trial court has broad discretion to admit or exclude evidence at trial. This standard of review compels the reversal of a trial court's ruling on the admission of evidence only if the court has clearly abused its discretion. [T]hat discretion is abused when a ruling is clearly against the

7

logic of the circumstances and is so unreasonable as to indicate a lack of careful consideration. Additionally, on direct appeal, this Court reviews the trial court for prejudice, not mere error, and will reverse only if the error was so prejudicial that it deprived the defendant of a fair trial. Trial court error is not prejudicial unless there is a reasonable probability that the trial court's error affected the outcome of the trial.

*State v. Forrest*, 183 S.W.3d 218, 223-24 (Mo. banc 2006) (internal citations and quotations omitted). In *Forrest*, the trial objection rested on hearsay, but the complaint on appeal was broadened to include improper bolstering. *Id.* As a result, the Court "applie[d] abuse of discretion review to the hearsay argument but review[ed] the bolstering claim for plain error." *Id.*

A hearsay statement is any out-of-court statement that is used to prove the truth of the matter asserted, and, although typically inadmissible, the dangers of hearsay are largely non-existent if the declarant is available for live testimony, under oath. *Id.* at 224. "'Improper bolstering occurs when an out-of-court statement of a witness is offered solely to duplicate or corroborate trial testimony.' 'However, if the out-of-court statement is offered for relevant purposes other than corroboration and duplication ... there is no improper bolstering.'" *Id.* (quoting *State v. Wolfe*, 13 S.W.3d 248, 257 (Mo. banc 2000) (footnote omitted), *abrogated on other grounds by Mitchell v. Kardesch*, 313 S.W.3d 667, 670 (Mo. banc 2010)).

Our high court determined in *State v. Harris* that a victim's in-court testimony regarding her out-of-court testimony is neither hearsay nor bolstering, and it does not run afoul of hearsay concerns for a third-party to testify as to the victim's out-of-court identification. 711 S.W.2d 881, 883 and 884 (Mo. banc 1986). In *Harris*, a police officer testified: "We stood three subjects in front of the vehicle that the victim was in and she identified the subject as the one who had robbed her." *Id.* at 882. In reaching its decision,

8

the Court overruled an earlier case, **State v. Degraffenreid**, 477 S.W.2d 57 (Mo. banc 1972), to the extent that it distinguished between a victim's testimony regarding a pretrial identification and another person's testimony "based on hearsay considerations[.]" **Id**. at 884.  In doing so, the Court adopted the following line of reasoning from the Ninth Circuit:

> The reasons for admitting identification statements as substantive evidence are that out-of-court identifications are believed to be more reliable than those made under the suggestive conditions prevailing at trial, and the availability of the declarant for cross-examination eliminates the major danger of hearsay testimony. * * * These reasons remain fully applicable when the person who testifies to the statement of identification is not the person who uttered it, so long as the latter also testifies and is available for cross-examination.

**Id**. at 885 (quoting **U.S. v. Elemy**, 656 F.2d 507, 508 (9th Cir. 1981)).

The Court also stated that its holding "does not foreclose the trial judge in his discretion from sustaining objections to such evidence based on other traditional grounds, but . . . such evidence is no longer presumptively inadmissible where [the] declarant and the corroborating witness both testify and are subject to cross-examination." **Id.** at 884. The Court did "caution that this type of evidence, while corroborative, must stand the test of cumulative evidence, accordingly the extent of such testimony and the number of such witnesses should be carefully confined." **Id.** at 885.

The trial testimony about which Defendant complains was elicited during the State's direct examination of Joseph, and the objection was limited to a claim that it constituted hearsay:[3]

> Q.      During the course of this show line-up, did your daughter have the black male do anything?

---

[3] Likewise, the motion for new trial specified that it was improper to overrule the objection to Joseph's testimony "about what his daughter said" at the out-of-court identification because this "was hearsay and should not have been allowed in through the testimony of Joseph[.]"  The motion did not claim error based on improper bolstering.

A.     She had him turn around.

Q.     What happened whenever he turned around?

[Trial counsel]:     Judge, I'm going to object at this time. This line of questioning, I think we need a side bar on this.

THE COURT:     Why don't you all come up to side bar. Stand up everybody.

[The following then occurred outside the presence of the jury]

THE COURT:     All right. Question was, "What did she say she saw," or something like that.

[Prosecutor]:     What happened at that point?

[Trial counsel]:     And, I believe, she's going to testify about certain aspects of the black male's jeans. I believe this is hearsay. That does not fall within the -- any exception to the hearsay rule being her impression. She is going to testify -- she can testify as to what she saw, but [Joseph] cannot. I believe it is hearsay and does not fall within the impression rule.

THE COURT:     Yes, sir.

[Prosecutor]:     I believe it is impression, and I also believe that she's going to testify next. It also goes to the point that she's going to point out the jeans to her dad. And then I'm going to question her dad as to whether or not he recognized the jeans after she looked at them.

THE COURT:     Your objection will be overruled. And you're satisfied with the record?

[Trial counsel]:     Yes.

THE COURT:     Okay. Any other relief requested?

[Trial counsel]:     No.

THE COURT:     Okay.

(A side bar was held with the reporter present.)

10

**PROCEEDINGS RETURNED TO OPEN COURT:**

THE COURT:      Have a seat folks.  You may proceed.

[Prosecutor]:      Thank you.

Q.      What happened when your daughter asked that [Defendant] be turned around?

A.      She recognized the design on the pants.

Q.      Did she point out the design on the pants to you and the officer?

A.      To an officer, yes.

Q.      Had you noticed the design on the jeans earlier that day?

A.      No.

Q.      But she did, is that correct?

A.      Yes.

Rose's subsequent direct examination testimony regarding her identification of Defendant was as follows.

Q.      At some point did you tell the police officers to have [Defendant] do something?

A.      Yes.

Q.      What did you tell the police officers or ask the police officers if they could do?

A.      "Could you have him turn around."

Q.      And why did you want to have him turn around?

A.      So I could look at his pants.

Q.      Was it because you remembered there was something special about those pants?

A.      Yes.

11

Q.    When he turned around what did you see?

A.    I saw the design.

Q.    Was that design the same design that the person who was robbing
your house was wearing?

A.    Yes.

Q.    Did you tell that to the police at that time?

A.    Yes.

Q.    Did you tell that to your dad at the time?

A.    Yes.

The trial court did not err in overruling Defendant's hearsay objection to Joseph's testimony about Rose's recognition of Defendant. *See **Harris***, 711 S.W.2d at 884. Further, Defendant's objection did not claim improper bolstering. As a result, any review of such a claim would be for plain error. *See **Forrest***, 183 S.W.3d at 224. Defendant has not requested such review, and we are not inclined to engage in it *sua sponte*. *See **Brown***, 438 S.W.3d at 507 (plain error review is discretionary with the appellate court).

Defendant's second point also fails, and the judgment of conviction and sentence is affirmed.

DON E. BURRELL, J. - OPINION AUTHOR

MARY W. SHEFFIELD, P.J. - CONCURS

NANCY STEFFEN RAHMEYER, J. - CONCURS