

# Missouri Court of Appeals

## Southern District

### Division One

STATE OF MISSOURI, )
)
    Plaintiff-Respondent, )
)
v. ) No. SD35366
)
MAXWELL BARNES, ) **Filed: April 30, 2019**
)
    Defendant-Appellant. )

### APPEAL FROM THE CIRCUIT COURT OF CRAWFORD COUNTY

Honorable Kelly W. Parker

**<u>AFFIRMED</u>**

Following a jury trial, Maxwell Barnes ("Defendant") was convicted of one count of using a child in a sexual performance and three counts of endangering the welfare of a child in the first degree. *See* sections 568.080 and 568.045.[1] Because Defendant either acquiesced in or affirmatively waived any objection to the trial court rulings he now attempts to challenge on appeal, we affirm.

---

[1] Section 568.080 was transferred to section 573.200, effective January 1, 2017. Unless otherwise indicated, all statutory references are to RSMo 2016.

**The Evidence**

Defendant does not challenge the sufficiency of the evidence to support his convictions. Therefore, we address only the evidence necessary to resolve Defendant's points, and we present that evidence in the light most favorable to the jury's verdicts. *State v. Hicks*, 456 S.W.3d 426, 428 (Mo. App. S.D. 2015).

The two child victims in this case are sisters. At the time of the charged conduct, one sister was five ("Older Sister") and the other was a one-year-old ("Younger Sister").[2] Sisters had been removed from their home and were in foster care due to suspected physical abuse by their mother, drug use by both parents, and unsanitary living conditions. Not long after they were placed into their foster home, Sisters began making allegations that they had been sexually abused by Defendant, prompting their foster mother ("foster mother") to call Jennifer Hart, Sisters' caseworker with what was then known as the Division of Family Services ("DFS"). Older Sister was forensically interviewed at the Child Advocacy Center ("CAC") by Diane Silman ("Ms. Silman"). Older Sister did not disclose any sexual abuse by Defendant during that interview.

Sisters were also engaging in inappropriate sexual behaviors in their foster home, leading to continued concern by foster mother that they had been sexually abused. After the first CAC interview, foster mother began taking Older Sister to a counselor, Melissa Meloy. During their counseling sessions, Older Sister revealed that Defendant had sexually abused her, which prompted another hotline call to DFS. This time, Older Sister told a DFS interviewer that Defendant and his friend had sexually abused her and Younger Sister. Older Sister went to the CAC for a second interview with Ms. Silman.

---

[2] We refer to the victims collectively as "Sisters." Sisters have an older sister, who was seven-years-old at the time, but no charges were filed against Defendant in relation to that child.

This time, Older Sister disclosed details of sexual assaults she had endured at the hands of Defendant, Sisters' mother, and Defendant's friend.

Defendant was charged with six class-C felonies: one count of using a child in a sexual performance and three counts of first-degree endangering the welfare of a child for acts committed against Older Sister, and one count of using a child in a sexual performance and one count of first-degree endangering the welfare of a child for acts committed against Younger Sister.

At trial, Morgan Galloway ("Ms. Galloway"), another forensic interviewer with the CAC, testified that she had conducted nearly a thousand interviews of children who had made allegations of abuse or neglect. Ms. Galloway had not interviewed Sisters, but she testified that, in her experience, the disclosure of child sex abuse is not a single event, but rather a process that the child goes through. She testified that children may provide a little bit of information, to see how it is received, before going into active disclosure. Ms. Galloway claimed that about one-fourth of children recant their abuse allegations, only to later reaffirm them. Ms. Silman similarly testified that disclosure of sexual abuse is a process for children, and they rarely disclose everything that happened to them in a single event.

The jury found Defendant guilty of all charges related to Older Sister -- one count of use of a child in a sexual performance, for which it recommended a seven-year prison sentence, and three counts of first-degree endangering the welfare of a child, for which it recommended a three year sentence on each count.[3] The trial court imposed the sentences recommended by the jury and ran them consecutively, yielding a total sentence of 16 years. This appeal timely followed.

---

[3] The jury found Defendant not guilty as to all charges related to Younger Sister.

**Analysis**

*Points 1 and 2*

We address these points together, as each alleges evidentiary error in allowing substantially similar testimony from the two CAC forensic interviewers, Ms. Galloway and Ms. Silman.

Point 1 claims:

> The trial court abused its discretion in overruling defense counsel's objections to forensic interviewer [Ms.] Galloway's testimony about the disclosure process in alleged abuse victims . . . in that the testimony of [Ms.] Galloway invaded the province of the jury, was more prejudicial than probative, and was improperly used to bolster [Sisters]' credibility.

Point Two presents the same claim in regard to the testimony of Ms. Silman.

We need not reach the merits of Defendant's points because he acquiesced in the trial court's decision at trial about how the testimony of these witnesses would be handled.  During her direct examination, Ms. Galloway was asked about a child's initial disclosures of sexual abuse, and the following colloquy occurred:

| | |
|---|---|
| [State:] | And can you describe to the jury what the protocols say about the process of disclosure? |
| [Galloway:] | Sure. |
| [Defense counsel]: | Judge, I'm going to object to her describing what the process of disclosure is to this jury.  The State is trying to shore up some issues. |
| The Court: | Counsel. |
| (Bench conference had at this time). | |
| The Court: | If she wants to say what her training shows as far as the process of disclosure I have heard it before, your [sic] going to object based upon... |

4

| | |
|---|---|
| [Defense counsel]: | I'm objecting based upon that he's trying to elicit just some general information to... |
| The Court: | I'll give you wide latitude on cross examination but that it's not applicable to this child unless she, but that's all she's going to say is here's what the training teaches her as far as what the process is okay. |
| [Defense counsel]: | And what is that going to, what is that answer going to be? Do you know? |
| The Court: | I've heard it a few times. |
| [Defense counsel]: | You know my position is that the State's really attempting to explain to the jury that there was a delay mechanism in reporting and using this witness to try to paper over that and I don't think she's got the expertise to discuss what's appropriate with these particular children. |
| The Court: | Okay I'm going to allow you some latitude on cross examination as far as the issue that you're not making a statement as to these particular children and this is just your generic training and that sort of thing, however you want to handle that, I'm going to allow you some latitude on that issue as far as cross examination on that particular issue. |
| [Defense counsel]: | *Alright fair enough.*  (Emphasis added.) |

Ms. Galloway proceeded to testify that a child's disclosure of sexual abuse "is rarely if ever a single event.  It is a process that children are seen to go through."  She talked in general about denials, delayed disclosures, piecemeal disclosures, and recanted disclosures.  During her testimony about recanted disclosures, defense counsel again objected "because she concluded that there were true allegations[.]"  The trial court sustained that objection.

When Ms. Galloway stated, "Nearly all of those children who take back an allegation. . .[,]" defense counsel objected on the ground that she had "objected to her testimony about children taking back an allegation."  The trial court overruled the

5

objection, and Ms. Galloway went on to say that nearly all children who take back an allegation "[t]hen go on to later reaffirm that information. Almost a hundred percent of them."

Defendant's first point fails for two reasons. First, Defendant's objection at trial – that Ms. Galloway did not have the requisite "expertise to discuss what's appropriate with these particular children" – is different from his complaints on appeal that Ms. Galloway's testimony invaded the province of the jury, was more prejudicial than probative, and was improperly used to bolster Sisters' credibility. "A point on appeal must be based upon the theory voiced in the objection at trial and a defendant cannot expand or change on appeal the objection as made." *State v. Goins*, 306 S.W.3d 639, 647 (Mo. App. S.D. 2010) (quoting *State v. Cannady*, 660 S.W.2d 33, 37 (Mo. App. E.D. 1983)).

In addition, "[a] party cannot complain on appeal of any alleged error in which, by his or her own conduct at trial, he or she joined in or acquiesced to." *Ratcliff v. Sprint Mo., Inc.*, 261 S.W.3d 534, 545 (Mo. App. W.D. 2008). *See also Letterman v. Director of Revenue*, 412 S.W.3d 459, 463 n.3 (Mo. App. S.D. 2013) (finding acquiescence in trial court's ruling where counsel stated, "Well, then that's fine. I'll just–Yeah. Okay"). Here, Defendant acquiesced to the trial court's handling of Ms. Galloway's testimony about the disclosure process when defense counsel said, "Alright fair enough."

As to Ms. Silman, she testified that children often do not disclose everything about sexual abuse during their first interviews, and multiple interviews may be necessary because "disclosure for children in particular is a process. They are not often ready to just talk about everything that happened the first time they meet someone." Ms.

Silman noted reasons for this behavior, such as children thinking that they had done something wrong themselves. Defendant's only objection to this testimony at trial was "to the narrative[,]" an objection that the trial court sustained.

Points 1 and 2 are denied.

*Point 3*

Point 3 claims:

> The trial court plainly erred in refusing to answer the jury's questions in penalty phase asking for definitions of concurrent and consecutive, and about whether the sentences would run consecutively or concurrently . . . in that the jury's notes and verdict indicate an intention that [Defendant] receive a total seven year sentence.

Once again, we do not reach any merit Defendant's argument might have because he affirmatively waived his complaint at trial. During its deliberations in the punishment phase of Defendant's bifurcated trial, the jury submitted some written questions to the trial court, which were addressed and resolved as follows.

| | |
|---|---|
| The Court: | Let's go back on the record. The question of the jury in writing and I'll have this filed is, does time served count at all. The next couple of sentences down it says, will the time we recommend be served consecutively or served, it's either consecutively or consequentially? I'm thinking they are saying consecutively or separately. |
| [Defense Counsel]: | Consequentially. |
| The Court: | Or it says separately. Consequentially or served separately. I take that to mean, I don't care what it means. I know what the answer is. The answer is, you are to be guided in your deliberations by the evidence as you remember it and the instructions of the court. Any objections by the State? |
| [The State]: | No your honor. |
| The Court: | By the defense? |
| [Defense Counsel]: | *No judge.* |

7

| | |
|---|---|
| The Court: | I'll print that and that will be the response of the court and I'll sign that. |
| | (Off record at this time). |
| The Court: | Okay the question from the jury is, may we have a definition for the terms concurrent, consecutively, sequentially? Court intends to give the same answer I gave before. Any objection by the State or defense? |
| [The State]: | No objection. |
| [Defense Counsel]: | *No objection*. |
| The Court: | That will be provided to the jury. (Emphasis added.) |

When the jury returned the verdict forms, they recommended sentences of "seven years concurrent" on the count of using a child in a sexual performance, and "three years concurrent" on each of three counts of endangering the welfare of a child. The trial court then asked, "What's the will of the state and defense as to the surplusage language of concurrent? I mean it's in there and I understand what it means." The following responses were given:

| | |
|---|---|
| [Defense Counsel]: | *I don't think it has any effect*. |
| [The Court]: | I don't think it really has an effect, except if that's the intent can I give you know? |
| [Defense Counsel]: | *I think you can give it some consideration but you're certainly not bound to do so*. |
| | [. . . .] |
| [The Court]: | Any objection to the court accepting the verdicts with the understanding that the current language is surplusage language? |
| [Defense Counsel]: | *I have no objection to you accepting the verdicts in the form that they have been returned by the jury*. |

[The State]:  No objection.  (Emphasis added.)

An announcement of "no objection" constitutes an affirmative waiver of appellate review, and "[u]nder such circumstances, 'even plain error review is not warranted.'" *State v. Lloyd*, 205 S.W.3d 893, 901 (Mo. App. S.D. 2006) (quoting *State v. Markham*, 63 S.W.3d 701, 707 (Mo. App. S.D. 2002)).

Point 3 is also denied, and the judgment of the trial court is affirmed.

DON E. BURRELL, P.J. – OPINION AUTHOR

NANCY STEFFEN RAHMEYER, J. – CONCURS

GARY W. LYNCH, J. – CONCURS