

# Missouri Court of Appeals

## Southern District

## Division One

STATE OF MISSOURI,                    )
                                      )
    Plaintiff-Respondent,        )
                                      )
vs.                                   )          No. SD35207
                                      )
KEVIN C. NEWMAN,                      )          Filed:  June 5, 2019
                                      )
    Defendant-Appellant.         )

### APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

Honorable Michael J. Cordonnier, Circuit Judge

### **<u>AFFIRMED</u>**

Kevin C. Newman ("Appellant") was convicted of first-degree murder and sentenced to life in prison without parole.  He appeals claiming (1) that the trial court erred in allowing the State to argue facts in closing argument that were not admitted at trial and (2) that the trial court erred in allowing hearsay statements into evidence.  We reject both claims and affirm the conviction.

We omit many of the gruesome facts that led to this conviction and subsequent appeal, as they are not necessary for this appeal, and proceed to the first point.  Appellant claims that the State offered facts during closing argument that were not admitted into

evidence. In fact, what Appellant is really arguing is that the State was allowed to make an inference from facts that were admitted into evidence.

During the State's closing argument, the prosecutor referred to witness King Thomas:

> It took a little while to get there, but yesterday we heard from King Thomas. You heard lots of things and mentions about him in the first couple days of it. Then he was here. See the fear, maybe the guilt, the anguish that he had over this. He saw a sense of duty to be here.
>
> . . . .
>
> King, I'm sure, wished he would have done something sooner. Many of us -- I might wish he would have done something sooner. But he was the only person with the information. He testified, "I was scared; I had two little girls; I know that they were out of state at the time but they weren't always going to be out of state." He feared [Appellant]. He feared what [Appellant] would do. And he knew what [Appellant] had told him that [Appellant] had done to [the victim]: I made it look like Freddy Krueger got her.

The prosecutor also referred to witness Alyssa Stewart during the State's final closing argument:

> Now, Alyssa Stewart didn't have that same direct contact with [Appellant]. But, she testified that whenever [Victim] was missing, an associate, Terry, who she'd had almost no contact with, out of the blue started messaging her.

It is these two references that Appellant now complains were not admitted into evidence. Appellant is mistaken. King Thomas testified at trial to the following:

> [Prosecutor:] King, just before we broke, I asked you why you would be afraid. Can you tell me why you would be afraid to testify today?
>
> [King Thomas:] Because [Appellant] told me that if I ever said anything about this situation that we're here for today, that he would hurt my kids, me, kill us.

Alyssa Stewart also testified at trial. During redirect examination, the prosecutor asked if she knew Terry Rucker. The following exchange occurred:

[Prosecutor:] Do you . . . know an individual by the name of Terry Rucker?

[Alyssa Stewart:] I do.

[Prosecutor:] And who is that?

[Alyssa Stewart:] He -- I met him through Kevin. It was, I think, one of his cellmates.

[Prosecutor:] Was he a friend of yours?

[Alyssa Stewart:] No. No. We had only met in passing.

[Prosecutor:] Numerous times? One time?

[Alyssa Stewart:] Two times at the most. The first time we ever met him, me and King ever met him, we gave him a ride to his house, which wasn't very far away. And that was probably the most time we'd ever spent with him.

[Prosecutor:] Did you ever call him?

[Alyssa Stewart:] No.

[Prosecutor:] Did you ever send messages by Facebook to him?

[Alyssa Stewart:] Not -- no, huh-uh.

[Prosecutor:] After you learned that Ashley had been missing, did he ever communicate with you?

[Alyssa Stewart:] He did. He, out of the blue –

. . . .

[Prosecutor:] Did he send you a message?

[Alyssa Stewart:] Yes, he did.

On cross examination, Alyssa Stewart testified as follows:

[Defense counsel:] In fact, King had once sent you a link to a news article about [Victim]; am I correct?

3

[Alyssa Stewart:] Not prior to her discovery. It was after, in regards to us being afraid for our families' lives.

    . . . .

[Defense counsel:] And his message was: We have a target on our head.

[Alyssa Stewart:] That was after her body was found.

In his recorded statement to investigators, Appellant characterized Terry Rucker as his best friend and cellmate:

Investigator: Terry was your cellmate, wasn't he?

Appellant: Yeah. That's like my best friend.

As noted above, it is clear that in closing argument the State clearly stated evidence that was admitted into evidence. Appellant complains that the placement of the statements after a discussion of the threats against King Thomas implies that Terry Rucker contacted Alyssa Stewart in order to threaten her. It is acceptable for the prosecutor to argue reasonable inferences from the evidence in closing argument. *State v. McFadden*, 391 S.W.3d 408, 422 (Mo. banc 2013); *State v. Edwards*, 116 S.W.3d 511, 537 (Mo. banc 2003). Alyssa Stewart knew about Victim being missing and Appellant's involvement in the murder because she was with Appellant and Victim when Victim disappeared. It is a reasonable inference when Alyssa Stewart heard from Appellant's best friend that she might consider that contact to be threatening. Point I is denied.

In his second point, Appellant complains that a statement of Jessica Thomas to the investigating officer, Detective Matt Farmer, that Appellant had told her ex-husband (King Thomas) that Appellant had "admitted to [King Thomas] that he had raped, tortured, and killed [the victim]" was hearsay because the statement was made to Jessica

4

Thomas by someone other than Appellant. Clearly, that is true, however, that does not end the query. "Hearsay evidence is in-court testimony regarding an out-of court statement used to prove the truth of the matter asserted therein that derives its value from the veracity of the out-of-court statement." ***State v. Newsom***, 299 S.W.3d 784, 788-89 (Mo.App. S.D. 2009). "Hearsay testimony is inadmissible unless it either fits into a recognized exception or it is offered for a non-hearsay purpose." ***Id.***

Detective Farmer testified that he received an anonymous tip concerning the murder but was not aware of King Thomas's presence on the night of the murder until he talked with Jessica Thomas. When Jessica Thomas told him of Appellant's statement to her ex-husband, the statement was not admitted for the truth of the statement but rather to show how the investigator proceeded with the investigation.

> Out-of-court statements that explain subsequent police conduct are admissible to supply relevant background and continuity. *State v. Dunn*, 817 S.W.2d 241, 243 (Mo. banc 1991). They are also admissible for non-hearsay purposes to show why an investigation focused on a defendant. *State v. Anderson*, 862 S.W.2d 425, 433 (Mo.App.E.D.1993). Testimony admitted under an exception to the hearsay rule, does not deprive a defendant of his Sixth Amendment rights. *Dixon v. State*, 763 S.W.2d 204, 207 (Mo.App.1983).

***State v. Howard***, 913 S.W.2d 68, 70 (Mo.App. E.D. 1995). The trial court did not abuse its discretion in admitting the statement by Jessica Thomas for a non-hearsay purpose.

Furthermore, even if the trial court erred in admitting the statement, "on direct appeal, this Court reviews the trial court for prejudice, not mere error, and will reverse only if the error was so prejudicial that it deprived the defendant of a fair trial." ***State v. Hicks***, 456 S.W.3d 426, 431 (Mo.App. S.D. 2015) (internal quotations omitted). "Trial court error is not prejudicial unless there is a reasonable probability that the trial court's error affected the outcome of the trial." ***Id.*** The statement regarding Appellant's

admission also came into evidence by King Thomas's testimony. King Thomas testified without objection that Appellant told him, "I made [the victim] look like Freddy Krueger got her."

Because the statement of Jessica Thomas was cumulative of the admitted testimony of King Thomas, Appellant was not prejudiced by its admission, even if erroneous. Improperly-admitted evidence is not prejudicial when essentially the same facts are established by other evidence before the court. *Elliott v. State*, 272 S.W.3d 924, 926 (Mo.App. S.D. 2009). Point II is also denied.

The judgment is affirmed.


Nancy Steffen Rahmeyer, J. – Opinion Author

Don E. Burrell, P.J. – Concurs

Gary W. Lynch, J. – Concurs