KURT S. ODENWALD, Judge
Introduction *541 James E. Steele, Jr. ("Steele") appeals from the motion court's denial of his Rule 29.15[1] motion following an evidentiary hearing. A jury found Steele guilty of driving while intoxicated ("DWI"). The trial court sentenced Steele to twelve years prison, as a chronic-DWI offender and a prior and persistent felony offender. Steele raises three points on appeal, each positing that the motion court clearly erred in denying his ineffective-assistance-of-counsel claims. Steele argues that defense counsel was ineffective because she failed to: advise him of his right to testify (Point One), strike a biased juror (Point Two), and investigate and introduce the maintenance records of the arresting officer's patrol vehicle (Point Three). Steele did not plead in his Rule 29.15 motion that defense counsel failed to advise him of his right to testify. Because that issue was not raised before the motion court, we deny Point One. We reject Point Two because the record does not establish that the juror at issue was biased. Because the maintenance records for the patrol vehicle would only impeach the arresting officer's testimony on a tangential issue, we deny Point Three. We affirm the motion court's judgment.
Factual and Procedural History
Around midnight on September 1, 2012, Sergeant Thomas Rohn ("Sgt. Rohn"), a long-time veteran of the Missouri State Highway Patrol, was driving along the highway when he observed Steele's truck swerve across the centerline four times. Sgt. Rohn activated his emergency lights to conduct a traffic stop. After the vehicles stopped, Sgt. Rohn approached Steele's truck.
As he approached the truck, Sgt. Rohn detected a "very strong odor" of alcohol coming from Steele. Sgt. Rohn asked Steele to produce identification. Sgt. Rohn saw Steele struggle to comply; Steele fumbled through his wallet and experienced difficulty extracting his identification. Sgt. Rohn, recognizing that intoxicated people lose dexterity in their extremities and demonstrate low motor skills, suspected that Steele was intoxicated. For safety reasons, Sgt. Rohn instructed Steele to leave his truck and sit in the patrol vehicle during the traffic stop. Instead of complying with the instruction, Steele drank from a nearby soda container. After Sgt. Rohn repeatedly admonished Steele to stop drinking, Steele eventually obeyed. Sgt. Rohn speculated that Steele was using soda to mask the odor of alcohol.
According to Sgt. Rohn, Steele struggled to walk to the patrol vehicle. Steele swayed and was unsteady on his feet. Steele entered the patrol vehicle, but did not close the patrol vehicle's door. Steele turned his head toward the open door when answering Sgt. Rohn's questions. Again, Sgt. Rohn believed that, by keeping the door open, Steele was attempting to conceal the odor of alcohol. During the traffic stop, Sgt. Rohn noticed that Steele's eyes were glossy, he often stared, and his speech was slurred.
Sgt. Rohn asked Steele if he had consumed any drinks. Steele responded that he had drank seven or eight beers. Sgt. Rohn instructed Steele to perform field-sobriety and preliminary-breath tests, but Steele declined. Unprompted, Steele opined to Sgt. Rohn that he was going to jail. Steele's premonitions were realized; Sgt. Rohn arrested and transported him to a detention station. At the detention station, Steele refused any additional sobriety tests.
*542 I. Trial Proceedings
The State charged Steele, as a chronic-DWI offender and a prior and persistent felony offender, with one count of DWI.[2] The case proceeded to a jury trial. At Steele's first trial, the parties stipulated that they would not use Steele's statement that he had consumed seven-to-eight beers. Steele also acknowledged and voluntarily waived his right to testify. The trial resulted in a hung jury. The State sought a retrial. At the second trial, the State admitted into evidence Steele's incriminating statements regarding the number of beers he had consumed.
During voir dire, defense counsel queried if any veniremembers had "been the victim in an accident involving a DWI?" Veniremember McKenzie ("Juror McKenzie") responded affirmatively. The following discussion occurred:
Juror McKenzie: Yeah. We got hit from behind by a drunk driver in Cameron in 2005.
Defense Counsel: Were there any injuries?
Juror McKenzie: Not apparent injuries.
Defense Counsel: Is there anything about that experience that is going to affect the way you listen to the evidence today?
Juror McKenzie: Shouldn't.
Defense Counsel: Shouldn't. Okay. Is there anything about that that's going to make you a little bit more angry at [Steele] than you would?
Juror McKenzie: No, I'm not angry at [Steele].
Defense Counsel: What ended up happening to the driver?
Juror McKenzie: Well, after he hit and ran and left us there, he took off and then after we called it in, the police drove on by us because he hit somebody else. He grabbed his keys out of his vehicle and they were actually fighting when the law got there.
Defense Counsel: And did he eventually get charged with a DWI?
Juror McKenzie: I'm not sure if he was charged-I assume that he was, but we had to go identify him.
Defense Counsel: All right. So is there anything about that experience that you're going to bring with you if you're on the jury when you go to deliberate?
Juror McKenzie: Shouldn't affect interpretation of the law.
Defense Counsel: Are you going to have any extra emotions when you listen to the evidence?
Juror McKenzie: No.
Juror McKenzie did not respond to any other voir-dire questions. Defense counsel did not challenge Juror McKenzie for cause or use a preemptory strike on him. Juror McKenzie served as the foreperson of the petit jury.
The State presented Sgt. Rohn's testimony as outlined above. In addition to describing the traffic stop, Sgt. Rohn testified about the performance of his patrol vehicle's recording equipment. Under normal circumstances, the recording equipment on Sgt. Rohn's patrol vehicle automatically engages when the patrol vehicle's emergency lights are activated and the recording equipment stores the subsequent footage on a "blade" device. According to Sgt. Rohn, when he attempted to download the recording of the traffic stop from the "blade" device, he realized that, *543 due to a malfunction, the "blade" device was blank. Sgt. Rohn noted that, previously, the "blade" device malfunctioned when it was not formatted properly and that technicians could reformat the "blade" device remotely.
Defense counsel cross-examined Sgt. Rohn about the recording equipment's performance. Sgt. Rohn conceded that he did not mention the equipment malfunction in his arrest report, his deposition, or his preliminary-hearing testimony. Sgt. Rohn acknowledged that department policy documents when the vehicles and recording equipment are "out of service" for repair. Sgt. Rohn explained that, to him, "out of service" meant that the recording equipment and vehicles were sent somewhere for repair. Sgt. Rohn said that his patrol vehicle and recording equipment were not sent away for repair after the equipment malfunction.
Steele did not testify in his defense. However, defense counsel called Amy Starbuck ("Starbuck"), who did not testify in the first trial. Starbuck testified that, on the night of Steele's arrest, she observed him outside a grocery store. Starbuck interacted with Steele and did not detect any signs of intoxication. Steele left the grocery-store parking lot in his truck, and Starbuck followed in her vehicle. Starbuck drove behind Steele's truck and did not notice him swerve across the centerline before or after Sgt. Rohn's patrol vehicle passed her.
After deliberating, the jury found Steele guilty. The trial court additionally found that Steele was a chronic-DWI offender-with four previous DWI convictions-and a prior and persistent felony offender. The trial court denied Steele's post-trial motions and sentenced him to twelve years in prison. Steele appealed his conviction and sentence. We affirmed. State v. Steele, 454 S.W.3d 400, 407 (Mo. App. E.D. 2015).
II. Post-Conviction Proceedings
Steele timely filed for post-conviction relief under Rule 29.15, contending that defense counsel was ineffective. Steele attached his pro se claims to the amended motion subsequently filed by counsel. Pertinent to this appeal, Steele alleged in his motion for post-conviction relief that his defense counsel was ineffective for unreasonably failing to call him to testify, for failing to strike Juror McKenzie from the jury, and for failing to investigate and introduce the maintenance records for Sgt. Rohn's patrol vehicle. The motion court granted an evidentiary hearing.
At the evidentiary hearing, Steele explained that he wanted to testify at the second trial. But, according to Steele, neither defense counsel nor the trial court asked him whether he wanted to testify. Steele admitted that he discussed his right to testify in the first trial and voluntarily waived it. Steele said he wanted to testify that he was sober during the traffic stop. Yet, at the evidentiary hearing, Steele could not recall the details of the traffic stop. Steele also acknowledged that he made incriminating statements to Sgt. Rohn, but insisted that he told Sgt. Rohn that he consumed the beers at lunchtime. Steele understood that, by testifying, the jury would learn about his prior DWI convictions. Further, Steele presented evidence that the Missouri State Highway Patrol did not have any maintenance records for Sgt. Rohn's patrol vehicle the months surrounding the arrest.
Defense counsel testified that she and Steele discussed whether he should testify prior to the first trial and that she was concerned about the prejudicial nature of his prior DWI convictions. Defense counsel did not discuss with Steele his right to testify prior to the second trial. Defense counsel could not remember why she and Steele did not discuss his right to testify in *544 the second trial, but did clarify that Steele never asked to testify. Pertaining to Juror McKenzie, defense counsel remembered debating whether to strike him, reviewing her notes with Steele, and instead electing to strike other veniremembers. Defense counsel could not recall specifically why she kept Juror McKenzie on the jury. Finally, defense counsel explained that she never requested the maintenance records of Sgt. Rohn's patrol vehicle.
The motion court denied Steele's motion for post-convict ion relief. The motion court found that Steele was not prejudiced by defense counsel's failure to call him to testify because his testimony would not have resulted in acquittal, the evidence of his prior DWI convictions would have hindered his defense, and there was no evidence that he was either misled or uninformed about his right to testify. The motion court ruled that defense counsel was not required to strike Juror McKenzie because there was no evidence indicating that he was biased or prejudiced against Steele. Finally, the motion court concluded that the maintenance records of Sgt. Rohn's patrol vehicle would not have assisted Steele's defense or resulted in a reasonable likelihood of Steele's acquittal. This appeal follows.
Standard of Review
We review the motion court's denial of a Rule 29.15 motion to determine whether the motion court's findings of fact and conclusions of law are clearly erroneous. Hopkins v. State, 519 S.W.3d 433, 435 (Mo. banc 2017) ; Rule 29.15(k). The motion court's findings of fact and conclusions of law are clearly erroneous if, after reviewing the entire record, this Court is "left with a definite and firm impression that a mistake has been made." McNeal v. State, 500 S.W.3d 841, 844 (Mo. banc 2016) (quoting Mallow v. State, 439 S.W.3d 764, 768 (Mo. banc 2014) ). The motion court's ruling is presumptively correct. Strong v. State, 263 S.W.3d 636, 642 (Mo. banc 2008). We defer to the motion court's credibility determinations made after an evidentiary hearing, and the motion court is free to believe or disbelieve the testimony of any witness, including the movant. Tate v. State, 461 S.W.3d 15, 24 (Mo. App. E.D. 2015).
Points on Appeal
Steele raises three points on appeal, each positing that the motion court clearly erred in denying his ineffective-assistance-of-counsel claims. Point One contends that defense counsel was ineffective because she failed to advise Steele about his right to testify. Point Two argues that defense counsel ineffectively permitted Juror McKenzie to serve on the jury. Point Three asserts that defense counsel incompetently failed to investigate and introduce at trial the maintenance records of Sgt. Rohn's patrol vehicle.
Discussion
I. The Strickland [3] Standard
To demonstrate ineffective assistance of counsel warranting post-conviction relief, the movant must satisfy, by a preponderance of the evidence, the two-prong test established in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Taylor v. State, 382 S.W.3d 78, 80 (Mo. banc 2012). Under Strickland, the movant must establish that: "(1) defense counsel failed to exercise the level of skill and diligence that a reasonably competent counsel would in a similar situation, and (2) [the movant] was prejudiced by that failure." McIntosh v. State, 413 S.W.3d 320, 324 (Mo. banc 2013).
*545 The movant must overcome the strong presumption that counsel's conduct was reasonable and effective. Davis v. State, 486 S.W.3d 898, 906 (Mo. banc 2016). To overcome this strong presumption, the movant "must identify 'specific acts or omissions of counsel that, in light of all the circumstances, fell outside the wide range of professional competent assistance,' " Id. (quoting Zink v. State, 278 S.W.3d 170, 176 (Mo. banc 2009) ). Trial-strategy decisions may establish the basis for finding ineffective assistance of counsel only if that decision was unreasonable. McLaughlin v. State, 378 S.W.3d 328, 337 (Mo. banc 2012). "[S]trategic choices made after a thorough investigation of the law and the facts relevant to plausible opinions are virtually unchallengeable[.]" Watson v. State, 520 S.W.3d 423, 435 (Mo. banc 2017) (quoting Anderson v. State, 196 S.W.3d 28, 33 (Mo. banc 2006) ).
The movant must also demonstrate prejudice under Strickland. McIntosh, 413 S.W.3d at 324. Prejudice occurs when there is a reasonable probability that, but for counsel's defective conduct, the result of the proceeding would have been different. Davis, 486 S.W.3d at 906. "A reasonable probability is a probability sufficient to undermine confidence in the outcome," Smith v. State, 370 S.W.3d 883, 886 (Mo. banc 2012) (quoting Anderson, 196 S.W.3d at 33-34 ). If either Strickland prong is not satisfied, then we need not consider the remaining prong, and the ineffective-assistance-of-counsel claim necessarily fails. Hoeber v. State, 488 S.W.3d 648, 655 (Mo. banc 2016).
II. Point One-Failure to Advise Steele about his Right to Testify
On appeal, Steele maintains in his first point relied on that defense counsel was ineffective, in part, because:
counsel failed to consult with Steele about his right to testify at his second trial and Steele wanted to testify. Steele is entitled to relief based on counsel's ineffectiveness in failing to call him to testify, in that a reasonably competent attorney under similar circumstances would have consulted with Steele about his right to testify, especially given the new admission of his statement that he had had seven or eight beers, and counsel's failure to do so deprived Steele of his right to testify ... and is therefore presumed prejudicial[.]
The argument in Point One focuses on defense counsel's unreasonable failure to advise Steele of his right to testify, and how that failure deprived him of the ability to testify during the second trial.
The State suggests that Steele's Point One on appeal materially differs from the claim presented by Steele to the motion court. The State maintains that Steele, in his amended and pro se motions, claimed only that defense counsel unreasonably failed to call him to testify, and that neither the amended nor pro se motion presented any allegation that defense counsel failed to advise Steele about his right to testify.
Rule 29.15's pleading requirements are not mere technicalities. Morrow v. State, 21 S.W.3d 819, 824 (Mo. banc 2000). To receive post-conviction relief under Rule 29.15, a movant must offer sufficient allegations to allow the motion court to meaningfully apply the Strickland standard and decide whether the pleaded claim warrants the relief requested. Wilkes v. State, 82 S.W.3d 925, 929 (Mo. banc 2002). Any issue, claim, or allegation not raised in a Rule 29.15 motion is thereafter waived. Johnson v. State, 333 S.W.3d 459, 471 (Mo. banc 2011) ; Barnett v. State, 103 S.W.3d 765, 773 (Mo. banc 2003). "Pleading defects cannot be remedied by the presentation of evidence and refinement of a claim on appeal." Johnson v. State, 388 S.W.3d 159, 167 (Mo. banc 2012) (quoting *546 Johnson, 333 S.W.3d at 471 ). Indeed, the purpose of an evidentiary hearing-and for that matter, an appeal-is not to provide the movant with an opportunity to produce new facts not alleged in the Rule 29.15 motion. See State v. Brooks, 960 S.W.2d 479, 497 (Mo. banc 1997).
At the onset, we must acknowledge that Steele's claim that defense counsel failed to advise him about his right to testify is separate and distinct from the allegation that defense counsel failed to call him to testify. See State v. Boclair, 878 S.W.2d 462, 465 (Mo. App. E.D. 1994). In Boclair, the movant on appeal argued both that his trial counsel was ineffective for not advising him of his right to testify and for failing to call him as a witness. Id. The Boclair court found that the movant did not allege in his Rule 29.15 motion that he was not advised about his right to testify and that he only pleaded that trial counsel failed to call him to testify. Id. at 465-66. Accordingly, we refused to address the movant's claim on appeal that his trial counsel failed to advise him of his right to testify. Id. at 465.
Similarly, in his post-conviction motion, Steele has pleaded only that the defense counsel was ineffective for failing to call him to testify. See id. at 465-66. In both the amended and pro se motions for post-conviction relief, Steele does not contend or raise any factual allegations that defense counsel failed to advise him of his right to testify. Specifically, in the amended motion, Steele alleged that trial counsel "unreasonably failed to call Movant to testify on his own behalf." In support of the amended motion, Steele claimed that he expressed his desire to testify with defense counsel, but defense counsel failed to call him, with no reasonable trial strategy accounting for her conduct. In his pro se motion, Steele also alleged that defense counsel "fail[ed] to call Movant to testify." In support of his pro se motion, Steele pleaded that he wanted to testify, but neither defense counsel nor the trial court asked him to testify at trial. Again, the allegations in Steele's motions simply do not raise a claim for, or plead any facts asserting, that defense counsel failed to advise Steele of his right to testify, thereby preventing his knowing waiver of the right to testify.
The distinction, between failing to call Steele as a witness to testify in his own defense and failing to advise Steele of his constitutionally protected right to testify, is substantive and not merely semantic. This concept is underscored by the record before us, wherein there is no dispute that defense counsel discussed with Steele his right to testify at his first trial, and Steele nevertheless chose not to testify in his own defense, presumably due to concern about his multiple prior DWI convictions. Challenging defense counsel's decision to call a witness to testify at trial, including the defendant, is materially different than claiming counsel did not inform the defendant of his or her right to testify. Here, Steele raised only the former in his motion for post-convict ion relief, and was silent with regard to the latter.
The record plainly shows that Steele did not plead defense counsel's failure to advise him of his right to testify in his post-conviction motion. Because Steele omitted this claim from his Rule 29.15 motion, the claim for relief alleging defense counsel's failure to inform him of his right to testify was not properly before the motion court, and is waived. See id. at 465. While Steele may have adduced evidence at the evidentiary hearing regarding defense counsel's failure to discuss his right to testify at his second trial, eliciting evidence at the evidentiary hearing does not remedy a deficient Rule 29.15 motion. See Johnson, 388 S.W.3d at 167. Because Steele's allegation regarding defense counsel's failure to advise *547 was not properly before the motion court, Steele has waived any consideration of this issue, and we cannot consider the point on appeal. See id. Point One is denied.
III. Point Two-Failure to Strike Juror McKenzie
In Point Two, Steele challenges the motion court's rejection of his claim that defense counsel was ineffective for failing to strike Juror McKenzie. A defendant has a constitutional right to a fair and impartial jury. Anderson v. State, 196 S.W.3d 28, 40 (Mo. banc 2006). A fair and impartial jury is one in which each and every member of the jury "is totally free from partiality whatsoever." Kyles v. State, 417 S.W.3d 873, 877 (Mo. App. E.D. 2014) (quoting Presley v. State, 750 S.W.2d 602, 606 (Mo. App. S.D. 1988) ). Absent a reasonable trial-strategy decision otherwise, trial counsel must ensure a jury free from partiality or bias. James v. State, 222 S.W.3d 302, 307 (Mo. App. W.D. 2007).
To succeed on a claim that counsel was ineffective for failing to strike a veniremember peremptorily or for cause, Steele must establish that, inter alia , "a juror who was actually biased sat on the petit jury." Byrd v. State, 329 S.W.3d 718, 723 (Mo. App. S.D. 2010) (quoting State v. Davis, 963 S.W.2d 317, 330 (Mo. App, W.D. 1997) ). An unqualified juror is a juror with views that substantially impair his or her ability to perform in accordance with the court's instructions and his or her oath. McGuire v. State, 523 S.W.3d 556, 564 (Mo. App. E.D. 2017). The mere possibility of bias or prejudice is not sufficient to disqualify a potential juror; instead, the evidence must clearly reveal that the challenged juror was, in fact, bias or prejudiced. See Pearson v. State, 280 S.W.3d 640, 646 (Mo. App. W.D. 2009). If the juror at issue was not actually biased, then trial counsel was not ineffective in failing to strike him or her from the jury. Thompson v. State, 437 S.W.3d 253, 263 (Mo. App. W.D. 2014).
Steele contends that, because Juror McKenzie was involved in an accident with a purportedly intoxicated driver, he could not be impartial or free from bias. Generally, the ability of a potential juror to put an experience out of his or her mind does not determine the potential juror's qualification. State v. Kinder, 942 S.W.2d 313, 336 (Mo. banc 1996) ; Hightower v. State, 43 S.W.3d 472, 476 (Mo. App. S.D. 2001). Rather, the inquiry must center on whether the potential juror's previous experiences biased or prejudiced him or her against the defendant, specifically. Hightower, 43 S.W.3d at 476 ; Ogle v. State, 807 S.W.2d 538, 542 (Mo, App. S.D. 1991). Stated differently, a potential juror's past experiences as a crime victim require his or her exclusion only if his or her responses suggest bias against the defendant in the present matter. See, e.g., Kyles, 417 S.W.3d at 877-78 ; State v. Bunch, 289 S.W.3d 701, 705 (Mo. App. S.D. 2009).
Fatal to Steele's point, the record does not support a finding that Juror McKenzie was a biased or unqualified juror. The fact that Juror McKenzie experienced a collision with an intoxicated driver seven years before Steele's trial commenced did not bar him from serving on the jury. The accident did not result in any evident injuries and no evidence existed suggesting that Juror McKenzie experienced any ongoing issues from the accident. The record does not reflect that the nature of the accident prevented Juror McKenzie from fairly considering the evidence or that Juror McKenzie harbored any ill will towards Steele, in particular.
Indeed, after revealing that he was involved in a "hit and run" with a purportedly intoxicated driver, Juror McKenzie explicitly stated that there were no apparent *548 injuries from the accident. In response to defense counsel's question whether that experience would affect the way he listened to the evidence in Steele's case, Juror McKenzie responded that it "shouldn't." Juror McKenzie further denied that the "hit and run" evoked anger against Steele or that it caused him any extra emotions. Finally, Juror McKenzie concluded that the "hit and run" incident "shouldn't affect interpretation of the law."
While the above answers may not have been absolute, they do not imply that Juror McKenzie would consider the evidence differently because of the nature of the case or that he was biased against Steele. "As much as judges and lawyers might desire it, people generally do not speak in absolutes, probably because they realize that few things are ever absolute." Ogle, 807 S.W.2d at 542 (quoting State v. Pride, 567 S.W.2d 426, 433 (Mo. App. St. Louis 1978) ). Juror McKenzie's explanations gave no indication that his past experiences impaired his ability to consider the evidence fairly or otherwise prevent him from complying with his oath and the trial court's instructions.
Because the record does not support a finding that Juror McKenzie was actually biased or unqualified, defense counsel was not ineffective in failing to strike him. See Thompson, 437 S.W.3d at 263. Further, we will not find defense counsel ineffective for failing to use a peremptory strike to remove a juror who was otherwise qualified. Cummings v. State, 445 S.W.3d 648, 653 (Mo. App. E.D. 2014). Steele is not prejudiced by the presence on the jury of one particular qualified juror over another qualified juror. Id. The motion court did not clearly err in denying Steele's claim that defense counsel was ineffective for failing to strike Juror McKenzie. Point Two is denied.
IV. Point Three-Failure to Investigate and Introduce at Trial the Maintenance Records of Sgt. Rohn's Patrol Vehicle
In Point Three, Steele reasons that competent counsel would have investigated and introduced the maintenance records of the patrol vehicle at trial because those records bolstered his theory that Sgt. Rohn lied about whether the patrol vehicle's equipment malfunctioned during the traffic stop. According to Steele, the patrol vehicle's maintenance records proved that Sgt. Rohn lied about the equipment malfunction by showing that there was no record of any maintenance on his patrol vehicle after the purported equipment malfunction.
Trial counsel, in preparing for and conducting a defense, is afforded wide latitude. Cornelious v. State, 351 S.W.3d 36, 46 (Mo. App. W.D. 2011). We will not second guess trial counsel's conduct merely because trial counsel's strategy was unsuccessful. See State v. Johnston, 957 S.W.2d 734, 755 (Mo. banc 1997). To succeed on a claim of ineffective assistance of counsel based on the failure to investigate evidence, Steele needed to (1) specifically detail the information his counsel failed to discover; (2) establish that a reasonable investigation conducted by counsel would have resulted in the timely discovery of such information; and (3) prove that the information would have aided or improved his position at trial. Cornelious, 351 S.W.3d at 46. If trial counsel failed to investigate and introduce impeachment evidence, the movant must demonstrate that such evidence either would have provided the movant with a defense or changed the outcome of trial. Frazier v. State, 431 S.W.3d 486, 494 (Mo. App. E.D. 2014). Indeed, the manner and extent of trial counsel's impeachment of a witness, absent something more, does not warrant post-conviction relief.
*549 Tucker v. State, 468 S.W.3d 468, 474 (Mo. App. E.D. 2015).
We are not persuaded that the motion court clearly erred in denying Steele's claim. We recognize that, ostensibly, the maintenance records of Sgt. Rohn's patrol vehicle may have impeached Sgt. Rohn's testimony by implying that he lied about whether the recording equipment on his vehicle malfunctioned. However, we cannot conclude that the maintenance records were necessarily inconsistent with Sgt. Rohn's testimony. Sgt. Rohn explained at trial that the "blade" device storing the recordings was formatted improperly. Sgt. Rohn described that technicians could reformat the "blade" device remotely, which did not require sending the patrol vehicle or recording equipment anywhere for repair. Sgt. Rohn testified that the department policy only documented when vehicles or recording equipment were sent "out of service" for repair and that his patrol vehicle and recording equipment were not sent "out of service" during the relevant period. Thus, according to Sgt. Rohn's testimony, no entry for service would be made in the maintenance records in the months following Steele's arrest even though the "blade" device required reformatting. As a result, Steele's proposed evidence-the lack of a maintenance entry around the time of his arrest-was easily explained by, and actually reinforced, Sgt. Rohn's testimony at trial that the lack of any recording was caused by a malfunctioning "blade" device versus an error with the recording equipment or patrol vehicle. The maintenance records would not have materially altered Steele's defense or changed the outcome of the trial. See Frazier, 431 S.W.3d at 494-95. Nor is defense counsel required to present evidence of questionable impeachment value. See State v. Twenter, 818 S.W.2d 628, 643 (Mo. banc 1991) ; King v. State, 505 S.W.3d 419, 425, 427 (Mo. App. E.D. 2016).
Importantly, the record shows that defense counsel extensively cross-examined Sgt. Rohn on his inconsistent explanations about the recording of the traffic stop. The jury was well aware of the changing timeline of Sgt. Rohn's purported realization that the "blade" device malfunctioned. Under the circumstances, we will not second-guess the extent and nature of defense counsel's cross-examination and impeachment of Sgt. Rohn. See King, 505 S.W.3d at 425 ; Tucker, 468 S.W.3d at 474.
Steele does not prove either that competent counsel was required to introduce the maintenance records or that there was a reasonable probability that this impeachment evidence would have altered the trial's outcome. Accordingly, the motion court did not clearly err in denying Steele's claim that defense counsel was ineffective for failing to investigate and introduce the maintenance records of Sgt. Rohn's patrol vehicle. Point Three is denied.
Conclusion
The judgment of the motion court is affirmed.
Robert G. Dowd, Jr., P.J., concurs.
Sherri B. Sullivan, J., concurs.

All rule references are to Mo. R. Crim. P. (2017).

The State also charged Steele with one count of driving while his license was suspended or revoked and with one count of failing to drive on the right side of the road. Steele pleaded guilty to driving with a suspended or revoked license. The State dismissed the charge for failing to drive on the right side of the road.

Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).