

# Missouri Court of Appeals
## Southern District
### Division One

RAMONE J. HICKS, )
)
               Appellant, )
)
  v. ) No. SD35911
)
STATE OF MISSOURI, ) FILED: March 30, 2020
)
               Respondent. )

### APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

Honorable David C. Jones, Judge

## AFFIRMED

Ramone J. Hicks ("Movant") appeals the denial, following an evidentiary hearing, of his Rule 29.15 motion for post-conviction relief.[1] Movant sought to vacate, set aside, or correct the trial court's judgment and sentences after a jury found him guilty of charges of first-degree robbery, first-degree burglary, and armed criminal action. *See* sections 569.020, 569.160, and 571.015.[2] Because none of Movant's five points relied on demonstrate any clear error by the motion court, we affirm.

---

[1] All rule references are to Missouri Court Rules (2019).

[2] All statutory references are to RSMo (2000). This Court affirmed Movant's convictions on direct appeal in *State v. Hicks*, 456 S.W.3d 426 (Mo.App. 2015). We borrow freely from the previously published factual details as stated within that opinion and incorporate additional facts as necessary for analysis in this appeal.

**Factual and Procedural Background**

Briefly stated and viewed in the light most favorable to the jury's verdicts, ***State v. Wright***, 247 S.W.3d 161, 163 (Mo.App.2008), the evidence adduced at Defendant's trial established the following. Joseph Vazquez ("Joseph")[3] was home with his two daughters, Rose Vazquez ("Rose") and Jessica Vazquez ("Jessica"), when three individuals—a Hispanic man wielding a knife, a white woman wielding a black gun with a long barrel, and a black man (later identified as Movant) wielding a silver hand gun—broke into their home. The black man's face was obscured by a drawn-up black hoodie and a blue bandana that covered the lower portion of his face, but the jeans he was wearing had a distinctive marking on the back.

Joseph's cell phone was one of the items taken by the robbers. By "pinging" that stolen phone shortly after the robbery occurred, police officers were able to determine that it was located at a Walmart store. Officers went to that location and took into custody a group of three people (including Movant) in the parking lot who matched the description Joseph had given of his assailants. A brown 1984 Chevy Caprice (the "Caprice") parked nearby contained the various items that had been stolen from the Vasquez residence. Joseph later identified the Hispanic man and the white female as two of the persons who had invaded his home. Rose identified Movant as the third person involved based upon a design on the back of his pants.

Several witnesses testified at Movant's trial, including Movant's sister, Soraya Miranda Hicks ("Sister"), whom Movant called as an alibi witness. During the State's cross-examination, the prosecutor asked some questions about the Caprice and mentioned, for the first time at the trial, a man by the name of Alvin Crawford ("Crawford"). Sister responded to this line of questioning by stating that Alvin Crawford was her cousin's friend with whom her cousin had

---

[3] We refer to members of the Vazquez family by their first names in order to avoid confusion. No disrespect or familiarity is intended.

had a child, that the Caprice belonged to Crawford, and that she had last seen the Caprice in her cousin's driveway. Defense counsel told the jury during closing argument that the Caprice did not belong to Movant.

The jury ultimately found Movant guilty of first-degree robbery, first-degree burglary, and armed criminal action. The trial court sentenced Movant to consecutive sentences of twenty years for each offense. His convictions were affirmed by this court in *State v. Hicks*, 456 S.W.3d 426 (Mo.App. 2015).

Movant filed a timely *pro se* Rule 29.15 motion for post-conviction relief. Counsel was appointed and filed a timely amended motion. In his amended motion, Movant alleged, *inter alia*, (1) that the State committed a *Brady*[4] violation by failing to disclose certain evidence showing that Movant was not the owner of the Caprice ("claim 8(a)"), (2) that the State engaged in prosecutorial misconduct by misrepresenting to the jury that Movant was the owner of the Caprice ("claim 8(b)"), (3) that trial counsel was ineffective for failing to investigate the Caprice ("claim 8(c)"), and (4) that errors alleged in the amended motion together amounted to cumulative error ("claim 8(h)").

Following an evidentiary hearing, the motion court ultimately denied Movant's amended motion. Movant timely appeals, raising five points relied on, which, for ease of analysis, we consider out of order. Additional relevant facts are set out in the discussion of each point, *infra*.

### Standard of Review

This Court's review of the denial of a Rule 29.15 motion for post-conviction relief is limited to determining whether the motion court's findings of fact and conclusions of law are clearly erroneous. Rule 29.15(k); *Williams v. State*, 168 S.W.3d 433, 439 (Mo. banc 2005).

---

[4] *Brady v. Maryland*, 373 U.S. 83 (1963).

Such "[f]indings and conclusions are clearly erroneous only if a full review of the record definitely and firmly reveals that a mistake was made." *Morrow v. State*, 21 S.W.3d 819, 822 (Mo. banc 2000). It is incumbent upon the movant in a post-conviction motion to prove his or her claims for relief by a preponderance of the evidence, Rule 29.15(i), and this Court presumes that the motion court's findings and conclusions are correct, *Wilson v. State*, 813 S.W.2d 833, 835 (Mo. banc 1991). "The trial court has the 'superior opportunity to determine the credibility of witnesses,' and this Court defers to the trial court's factual findings and credibility determinations." *Zink v. State*, 278 S.W.3d 170, 178 (Mo. banc 2009) (quoting *State v. Rousan*, 961 S.W.2d 831, 845 (Mo. banc 1998)).

## Discussion

### Point 1 – Alleged Deficiencies in Form and Language of the Judgment not Preserved for Appellate Review

Movant's first point contends:

The motion court clearly erred in denying claim 8(b) of [Movant's] amended Rule 29.15 motion without issuing sufficient findings of fact and conclusions of law on this claim in violation of Rule 29.15(j) and in derogation of Mr. Hicks' right to due process of law under the Fourteenth Amendment to the United States Constitution and Article I, Section 10 of the Missouri Constitution, in that no exception to Rule 29.15(j) applies and the motion court's findings of fact and conclusions of law are not sufficiently specific to permit meaningful appellate review.

In his argument, Movant identifies the following findings of fact and conclusions of law, contained in a footnote within the motion court's discussion of claim 8(a), that he claims are insufficient to permit appellate review of claim 8(b):

Movant also contends that the State engaged in prosecutorial misconduct by referring [to the Caprice] as "Defendant's vehicle." However, the jury was well aware of the true ownership of the [Caprice] and the prosecution's reference as such was referring to the Movant's possession of the [Caprice] versus actual ownership. The Court finds the prosecutor's testimony to be credible on this issue and does not find that the State was attempting to mislead the jury by that reference.

4

Movant faults these findings in two respects—(1) "the motion court's footnote purporting to address claim 8(b) did not make any express conclusion of law as to this claim", and (2) "because the motion court focused exclusively on the culpability of the prosecutor, neither was there analysis of the fairness of [Movant's] trial in light of the way the Caprice was characterized or how the jury perceived the prosecutor's characterization of the vehicle." The State responds, and we agree, that Movant's arguments are not preserved for appellate review.

Movant is correct that the rules governing post-conviction relief proceedings require that "[t]he court *shall* issue findings of fact and conclusions of law on all issues presented, whether or not a hearing is held." Rule 29.15(j) (emphasis added).

Rule 29.15(j) also mandates, however, that Rule 78.07(c) "shall apply" to post-conviction relief proceedings. Rule 78.07(c) is a rule of civil procedure that requires that "allegations of error relating to the form or language of the judgment, including the failure to make statutorily required findings, *must* be raised in a motion to amend the judgment in order to be preserved for appellate review." (Emphasis added.) "The purpose of Rule 78.07(c) is to ensure that complaints about the form and language of judgments are brought to the attention of the trial court where they can be easily corrected, alleviating needless appeals, reversals, and rehearings." *Gerlt v. State*, 339 S.W.3d 578, 584 (Mo.App. 2011) (*quoting Hollingshead v. State*, 324 S.W.3d 779, 783 (Mo.App. 2010) (Howard, J., dissenting)). "In the event that such a motion is filed [under Rule 78.07(c)], it must 'state with *particularity* the grounds therefor.'" *In re Holland*, 203 S.W.3d 295, 301–302 (Mo.App. 2006) (quoting Rule 55.26(a)).

Here, after the motion court entered its order, on December 4, 2018, containing findings of fact and conclusions of law denying Movant's claims, Movant timely filed a Motion to

Amend the Judgment Pursuant to Rule 78.07(c) (the "motion to amend").[5] The motion to amend, however, did not assert any of the deficiencies related to claim 8(b) that Movant now raises in this appeal, *supra*. Instead, it contained only the general allegation that "[t]he Court's Order of December 4, 2018[,] does not address all issues presented in the amended motion without ambiguity and in sufficient detail to allow meaningful review on appeal."

This generic allegation does not point to any specific finding in the judgment that is alleged to be deficient or to any specific issue in the case for which findings or conclusions are alleged to be lacking in the judgment. Without such specificity and particularity, this allegation brings no case-related finding or issue to the attention of the trial court for potential correction. Indeed, this generic allegation could be asserted verbatim in any motion to amend any judgment in any court-tried civil case without regard to the specific issues involved in the case or the specific findings or lack of findings or conclusions in that particular judgment. If such an allegation was sufficient to comply with Rule 78.07(c) to preserve form and language of the judgment issues for appellate review, an attorney would risk malpractice for not routinely and rotely reciting it in a Rule 78.07(c) motion filed in every court-tried civil case. Such form over substance would defeat the purpose of the rule and, in effect, nullify it.

By generally challenging the entire judgment, Movant's allegation in his motion to amend failed to direct the attention of the motion court here to any particular specific issue for which the findings or conclusions in this particular judgment were insufficient to allow for meaningful appellate review, much less the specific issues Movant raises in this appeal. Having failed to bring these specific and particular issues to the motion court's attention in his Rule

---

[5] The record does not reflect that the motion court ever ruled on the motion to amend or issued any revised findings of fact and conclusions of law. As such, the motion to amend was deemed denied after ninety days. *See* Rule 78.06.

78.07(c) motion to amend, Movant has failed to preserve them for appellate review.  Movant's first point is denied.

### Point 3 – Prosecutorial Misconduct Claim not Cognizable

Movant's third point contends:

> The motion court clearly erred in denying claim 8(b) of the amended motion in derogation of [Movant's] rights to due process of law and to a fair trial under the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 and 18(a) of the Missouri Constitution, in that, despite referring to the Caprice as "defendant's vehicle," the prosecutor knew [Movant] did not own the vehicle and deliberately suppressed the owner's true identity until it cross-examined [Movant's] alibi witness; the prosecutor's actions gave the jury the impression [Movant] actually owned the Caprice, and by presenting this information to the jury during [Movant's] case-in-chief, his defense was substantially prejudiced, since it required him to change strategy during trial and undermined the credibility of his defense.

This claim fails, however, because it is not cognizable in this Rule 29.15 proceeding.

"A freestanding claim of prosecutorial misconduct is generally not cognizable in a Rule 29.15 proceeding."  *Tisius v. State*, 183 S.W.3d 207, 212 (Mo. banc 2006).  "If the alleged misconduct was apparent at trial, then it is an issue for direct appeal, not a Rule 29.15 proceeding."  *Id.*  "Accordingly, this Court has reviewed claims of prosecutorial misconduct in a Rule 29.15 proceeding when the alleged misconduct was serious and would not be apparent during the trial."  *Id.*

Claim 8(b) alleged that "the State portrayed that the [Caprice] seized on the night of September 2, 2010[,] belonged to [M]ovant when in fact it knew that it belonged to Alvin Crawford"[6] and then "used its portrayal during trial of [M]ovant's ownership of the [Caprice] to discredit [S]ister's testimony."

---

[6] In his brief, Movant identifies the following statements by the prosecutor that he argues imply Movant's ownership of the Caprice:  "They [(referring to the police)] assume that this might be [Movant's] car[,]" "[Movant's] car contains those valuables that were taken that day[,]" "They locate his vehicle there at Wal-Mart[,]" "He doesn't want them to realize it's his car[,]" and "They put the property into his vehicle."

In specifically addressing claim 8(b), the motion court made the findings of fact and conclusions of law quoted in our discussion of point 1, *supra*. The motion court made additional relevant findings, however, while discussing claim 8(a). It stated:

> Despite Movant's assertions to the contrary, the record is clear that both Movant and his trial counsel were aware prior to trial that he was not the owner of the [Caprice]. In addition, testimony was introduced at trial that Movant was not the owner of the [Caprice]. Finally, trial counsel stated during his closing argument that Alan Ray Crawford was the owner of the [Caprice].

These factual findings, unchallenged by Movant, are relevant to claim 8(b) because, assuming without deciding there was prosecutorial misconduct as claimed, such misconduct *should have been apparent* to Movant and his counsel who were fully aware that the Caprice did not belong to Movant. Movant, therefore, could have sought contemporaneous relief at trial and on direct appeal. The ability to have done both renders Movant's claim 8(b) not cognizable in this Rule 29.15 proceeding. *Tisius*, 183 S.W.3d at 212. Movant's third point denied.

### Point 4 – No IAC Finding is not Clearly Erroneous

Defendant's fourth point contends:

> The motion court clearly erred in denying claim 8(c) of the amended motion in derogation of [Movant's] rights to effective assistance of counsel under the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 and 18(a) of the Missouri Constitution, in that, given he should have known Crawford owned the Caprice prior to trial from at least one item of discovery and [Movant] himself, trial counsel's failure to depose Crawford or investigate the facts around the vehicle to uncover evidence that [Movant] was not driving the vehicle the night of the incident was unreasonable, and, given Crawford's later admission he was also at the Walmart on the night in question, trial counsel's decision not to change his trial strategy after a less than thorough investigation was not reasonable; because trial counsel's failure to investigate the facts of Alvin Crawford's ownership of the Caprice deprived [Movant] of a compelling third-party-guilt defense, [Movant] was prejudiced thereby.

We disagree.

In order to prevail on a post-conviction motion alleging ineffective assistance of counsel ("IAC"), a movant must overcome a strong presumption of competence and demonstrate, by a

8

preponderance of the evidence, that (1) counsel did not exercise the customary skill and diligence that a reasonably competent attorney would have exercised under the same or similar circumstances ("performance prong"), and (2) counsel's failure to exercise such skill and diligence prejudiced the movant in some way ("prejudice prong"). *Strickland v. Washington*, 466 U.S. 668, 687, 689 (1984); *Sanders v. State*, 738 S.W.2d 856, 857 (Mo. banc 1987). To satisfy the performance prong, a movant "must overcome the presumptions that any challenged action was sound trial strategy and that counsel rendered adequate assistance and made all significant decisions in the exercise of professional judgment." *State v. Simmons*, 955 S.W.2d 729, 746 (Mo. banc 1997). Prejudice occurs when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Deck v. State*, 68 S.W.3d 418, 429 (Mo. banc 2002). In reviewing such claims, we are not required to examine both prongs, if a movant fails to satisfy the performance prong, we need not consider the prejudice prong, and vice versa. *Strickland*, 466 U.S. at 697; *Sanders*, 738 S.W.2d at 857.

Additionally,

> [t]o succeed on a claim of ineffective assistance of counsel based on the failure to investigate evidence, [Movant] needed to (1) specifically detail the information his counsel failed to discover, (2) establish that a reasonable investigation conducted by counsel would have resulted in the timely discovery of such information, and (3) prove that the information would have aided or improved his position at trial.

*Steele v. State*, 551 S.W.3d 538, 548 (Mo.App. 2018).

Here, Movant's claim 8(c) alleged that he received ineffective assistance of counsel "in that his trial counsel failed to conduct adequate investigation into the [Caprice] that was seized

9

after the home invasion" and, specifically, failed to learn that Movant "was not driving the [Caprice] the night of the incident[.]"[7] According to his argument in support of this claim,

> Defense counsel's investigation of the [Caprice] was of extreme importance to [M]ovant's case especially in light of the fact that he presented an alibi defense and none of the victims could identify him. Joseph Vazquez, one of the victims, described movant as 5'8" to 5'10" tall a description that fits that of Alvin Crawford, a black man, whose vehicle was on the Walmart parking lot.

Movant relies upon three exhibits, Movant's Exhibits A-1, A-2, and B, received into evidence, which purportedly came to light following Movant's trial and convictions. The former two exhibits contain a purported copy of Crawford's driver's license reflecting Crawford's height as 5'8" ("Crawford's driver's license").[8] The latter exhibit is an affidavit, purportedly by Crawford, containing the following sworn statement:

> On or about the day of September 2, 2010[,] I, Alvin Crawford exited the Walmart on Sunshine and West byepass [sic] to discover my 1984 Chevy Caprice Classic was no longer in the parking lot. I was informed by Walmart staff that a car had been towed by Springfield Police Department. On September 22, 2010[,] I arrived at the Springfield Police Department where my car was released to me

("the Crawford affidavit").[9]

In denying claim 8(c), the motion court concluded that the alleged information trial counsel failed to discover "would not have yielded material evidence or a change in trial strategy sufficient to negate the overwhelming evidence by the State that Movant *operated* the [Caprice] on the night of the robbery." (Emphasis added.) We find no clear error in the motion court's

---

[7] Movant also alleged in claim 8(c) of his amended motion that trial counsel was ineffective in failing to learn that "[M]ovant did not own the [Caprice]," "the police released the [Caprice] to its owner," "the [Caprice] was destroyed by its owner," and "the key that the police alleged they seized from [M]ovant would not have opened both the door and started the ignition[.]" By failing to address in his brief the motion court's findings of fact and conclusions of law related to these additional allegations, Movant has either failed to assert or abandoned any claim of motion court error as to them.

[8] Exhibits A-1 and A-2 are addressed in further detail in our discussion of point 2, *infra*.

[9] Crawford's sworn statement was subscribed on September 14, 2015, over two years after Movant's trial and conviction. The motion court took judicial notice of the Crawford affidavit after post-conviction counsel moved to supplement the record on the basis that Crawford's in-person testimony could not be secured for the evidentiary hearing because he was, at the time, in poor health. At oral arguments, post-conviction counsel disclosed that Crawford has since passed away.

10

determination that Movant suffered no prejudice and, therefore, need not address trial counsel's performance.

The following relevant evidence was adduced at Movant's trial. The break-in at the Vazquez residence took place sometime between 9:00 p.m. and 10:00 p.m. on September 2, 2010. Jose Bibiano ("Bibiano") and Casey Holt ("Holt"), were later positively identified by Joseph as the Hispanic man and white woman, respectively, who participated in the break-in. Soon after the break-in, these two individuals, along with Movant, were observed together by Walmart employees attempting to purchase expensive merchandise, including a flat panel television. Sometime between 11:45 and midnight, all three individuals exited the Walmart together and were walking towards the Caprice when they were arrested by police.

A search of Holt revealed a credit card, a debit card, and a cell phone, all of which belonged to Joseph, as well as receipts indicating several attempts to use Joseph's cards after the break-in. When police began examining the Caprice, Movant was overheard asking, "What are they doing with my car?" Thereafter, the police seized a car key from Movant that unlocked the Caprice. Following Movant's grant of consent to search the Caprice, the police discovered the stolen belongings from the Vazquez household, a silver handgun under the driver's seat, a black pellet gun, a blue bandana, a black hoodie, and a knife.

Bibiano pleaded guilty to burglary, armed criminal action, and robbery. He agreed to testify against his accomplices and, at Movant's trial, identified Movant and recounted how the three of them had committed the charged crimes.

Movant disagrees that this evidence was "overwhelming" as found by the motion court. To support his contrary argument, he notes that Bibiano provided "snitch" testimony, which is notoriously unreliable; that besides Bibiano, no one could positively identify Movant as the black

11

man who participated in the break-in; that DNA and fingerprint evidence was inconclusive or nonexistent; and that the car key recovered from Movant would not turn over the Caprice's engine. Thus, in light of such evidentiary deficiencies, Movant argues that evidence that Crawford, the owner of the Caprice, matched Joseph's description of the black man involved in the break-in and was present at the Walmart around the relevant timeframe that the Caprice was discovered would have allowed Movant to present a viable third-party guilt defense.

Movant's argument is not persuasive. There is no dispute that there was overwhelming evidence connecting Bibiano, Holt, and the Caprice to the break-in and robbery. Thus, even assuming without deciding that the relied-upon evidence concerning Crawford would have been admissible at Movant's trial, that evidence does nothing to mitigate or explain Movant's association with and connections to those individuals and the Caprice during the short timeframe following the break-in and preceding his arrest. While the Crawford affidavit supports that Crawford was in the Walmart that day and when he exited the Walmart the Caprice was not in the parking lot, those facts have little, if any, relevance in the context of this case absent any additional evidence, which Movant has not supplied, connecting Crawford to Bibiano and Holt and disconnecting Movant from his exertions of possessory authority over the Caprice.

In sum, Movant failed to show and ultimately persuade the motion court that evidence from Crawford's driver's license or trial testimony consistent with the information in the Crawford affidavit would have improved Movant's position at trial. *See **Steele***, 551 S.W.3d at 548. Because Movant failed to demonstrate **Strickland** prejudice, the motion court did not clearly err in denying claim 8(c). Movant's fourth point is denied.

### *Point 2 – No* **Brady** *Violation Finding is not Clearly Erroneous*

Movant's second point contends:

12

> The motion court clearly erred in denying claim 8(a) of the amended motion alleging respondent's *Brady* violation in derogation of [Movant's] rights to due process of law and to a fair trial under the Sixth and Fourteenth Amendment of the United States Constitution and Article I, Sections 10 and 18(a) of the Missouri Constitution, in that the Exhibits A-1 and A-2 Custody Tow Vehicle Release Forms respondent failed to disclose were exculpatory, not merely because they showed Alvin Crawford was the actual owner of the Caprice, but also because they confirmed Crawford matched the description of the African-American home invader. The absence of this exculpatory evidence was sufficient to undermine confidence in the trial's outcome and the motion court's contrary findings misapplied the *Brady* standard and were not supported by the record, which error should leave this Court with a definite and firm impression that a mistake has been made.

We disagree.

Movant alleged in claim 8(a) of the amended motion that the prosecutor committed a *Brady* violation by failing to disclose to Movant that "paper work that was in the possession of the Springfield Police Department consisting of a vehicle release form, authorization to tow, and vehicle claim notification" ("the Caprice impoundment forms").[10]

The following facts are relevant to this claim. The Caprice impoundment forms, received by the motion court into evidence as Exhibits A-1 and A-2, reflect that the Caprice was owned by and, after it had been towed by the police, claimed by and ultimately released to Crawford. As noted in our discussion of point 4, *supra*, the Caprice impoundment forms contain a copy of Crawford's driver's license, which states his height as 5'8". Both Movant and his trial counsel testified that they had not received or do not recall receiving the Caprice impoundment forms from the State prior to or during the course of Movant's trial. Movant claimed that he did not learn of the Caprice impoundment forms until they were discovered by his appellate counsel

---

[10] In addition to *Brady*, Movant also claimed that a violation of Rule 25.03 had also occurred. *See State v. Moore*, 411 S.W.3d 848, 852–54 (Mo.App.2013) (explaining that *Brady* obligations differ from those under Rule 25.03). However, we need not address Rule 25.03 in this appeal because Movant's point relied on only challenges the motion court's *Brady* analysis. *See State v. Coody*, 867 S.W.2d 661, 664 n.1 (Mo.App. 1993) ("We limit our review to matters raised in the points relied on.").

during the pendency of Movant's direct appeal. The prosecutor, however, testified that, although he could not be sure whether the Caprice impoundment forms had been turned over, it was his practice to turn over all discovery to the defense.

"If the State suppresses evidence favorable to a defendant and material to either the guilt or penalty phase, due process is violated." *Johnson v. State*, 406 S.W.3d 892, 901 (Mo. banc 2013) (citing *Brady v. Maryland*, 373 U.S. 83, 87 (1963)). "A *Brady* violation contains three components: 'The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.'" *Id.* (quoting *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999)). The third component, prejudice, is interchangeable with the materiality of the evidence. *State v. Moore*, 411 S.W.3d 848, 856 (Mo.App. 2013). "Evidence is material if there is a reasonable probability that its disclosure to the defense would have caused a different result in the proceeding." *State ex rel. Engel v. Dormire*, 304 S.W.3d 120, 128 (Mo. banc 2010) (citing *Strickler*, 527 U.S. at 280). "The materiality standard for *Brady* claims is established when 'the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.'" *Id.* (quoting *Kyles v. Whitley*, 514 U.S. 419, 435 (1995)).

In rejecting claim 8(a), the motion court issued findings of fact and conclusions of law addressing the prejudice (materiality) prong of the above-described *Brady* analysis. Specifically, the motion court found that "Movant has failed to establish that the evidence in question was material." The motion court also found that "Movant has also failed to establish that disclosure of the evidence in question would have caused a different result in the proceeding" and "[a]s such, Movant has failed to establish that he was prejudiced by not receiving the vehicle

14

information[.]"  In support of the former finding, the motion court noted that "the issue at trial was ... Movant's possession and use of the [Caprice]" and then went on to list the evidence supporting the State's argument that Movant possessed and used the Caprice.  In support of the latter finding, the motion court listed evidence showing that Movant and defense counsel were aware before trial that Movant did not own the Caprice.  The motion court went on to state that in light of the "extremely strong" evidence against Movant, which included evidence that he possessed the Caprice at the time of the underlying crimes and his identification by one of the victims, "there is nothing to support the Movant's proposition that the disclosure of the [Caprice impoundment forms] prior to trial would have altered the outcome of this case."  The motion court also found defense counsel's testimony to be credible that receipt of the Caprice impoundment forms would not have altered his trial strategy.

Movant asserts four arguments addressing the motion court's findings of fact and conclusions of law.  Movant argues, first, that trial counsel changed his strategy regarding the Caprice's ownership after Sister testified that Crawford was its owner, thereby showing that trial counsel was unaware of this fact and would have changed his strategy if he had known, second, that the evidence against Movant was not strong and the Caprice impoundment forms would have provided him with evidence supporting a third party guilt defense, third, that the State argued Movant both owned and operated the Caprice, and, if trial counsel was made aware that Movant *did not* own the Caprice, trial counsel would have used that information to impeach the State's evidence to the contrary, and, fourth, that the motion court utilized an incorrect materiality standard in its **Brady** analysis.  None of Movant's arguments are persuasive.

Movant's first and third arguments—that trial counsel would have changed his trial strategy and would have impeached the State's witnesses had trial counsel known about

15

Crawford—fail because those arguments are refuted by the record. The motion court found that Movant and trial counsel already knew, before trial, of Crawford's existence and that he owned the Caprice. We defer to the motion court's factual findings and credibility determinations. *Zink*, 278 S.W.3d at 178.

Movant's second argument—that Movant was denied a viable third-party guilt defense—fails for a similar reason that Movant's IAC claim in point 4, *supra*, failed. In that point, Movant failed to satisfy *Strickland* prejudice due to trial counsel's failure to uncover the evidence of Crawford's height (relying on Crawford's driver's license) and Crawford's claim that while at the Walmart he discovered that the Caprice had been towed by police (relying on the Crawford affidavit). Here, the *only* evidence at issue are the Caprice impoundment forms containing a copy of Crawford's driver's license. We find no clear error in the motion court's finding that the withholding of this evidence, showing merely that Crawford's race and height fit within the parameters of Joseph's initial general description of the black man involved in the break-in, fails to satisfy the *Brady* prejudice standard, as recited by *Engle*, *supra*. In other words, Movant failed to show and ultimately persuade the motion court that the withheld evidence, which showed no direct connection between Crawford and the break-in other than evidencing his ownership of the Caprice (which, as already stated, was known to the defense), could reasonably have put the whole case in such a different light as to undermine confidence in the verdict.

Movant's fourth argument—that the motion court utilized the incorrect legal standard for materiality—has two prongs, each of which fails for different reasons. Under the first prong, Movant argues that by analyzing "materiality" and "prejudice" as if they were separate elements, the motion court "unreasonably and impermissibly required [Movant] to prove an additional <u>fourth</u> component to the *Brady* standard articulated in *Strickler v. Greene*, 527 U.S. 263, 281-82

16

(1999)." (Bold added.) Movant, however, fails to explain his reasoning or elaborate on this argument. The fact remains that Movant failed to prove **Brady** prejudice, which is also described as materiality. The motion court's mere use of both terms to articulate this finding does not support the contention that it imposed an additional element upon Movant's burden of proof.

Under the second prong of Movant's fourth argument, Movant takes issue with the motion court's statements that "Movant has also failed to establish that disclosure of the evidence in question *would* have caused a different result in the proceeding" and "there is nothing to support the Movant's proposition that the disclosure of the ownership paperwork prior to trial *would* have altered the outcome of this case." (Emphasis added.) Movant goes on to argue that

> Subsequent to **Strickler**, the United States Supreme Court explained that, under **Brady**, "[e]vidence qualifies as material when there is any reasonable likelihood it **_could_** have affected the judgment of the jury." **Wearry**, 136 S.Ct. at 1006. Inasmuch, [Movant] "must only show that the new evidence is sufficient to undermine confidence in the verdict." **Id.**; *see also* **State ex rel. Engle v. Dormire**, 304 S.W.3d 120, 128 (Mo. banc 2010) (citation omitted).[] In this way, [Movant] "can prevail even if…the undisclosed information may not have affected the jury's verdict." **Wearry**, 136 S.Ct. at 1006 n.6. The motion court included none of this distinctly different and more nuanced language from **Wearry** in its order denying claim 8(a). Accordingly, the motion court's adoption of imperative language (i.e., "would") when the Supreme Court of the United States has promulgated a permissive standard for **Brady** materiality (i.e., "could have affected") should leave this Court with a definite and firm impression that a mistake has been made. **Wearry**, 136 S.Ct. at 1006.

(Bold added and citations to the record omitted.) The motion court however, was not mistaken and did not clearly err in citing to and relying upon controlling law. In reciting legal principles comprising **Brady** prejudice, the motion court relied on **Engle**, *supra*, an opinion by the Supreme Court of Missouri, which itself relied on **Strickler**, for the principle that "[e]vidence is material if there is a reasonable probability that its disclosure to the defense *would* have caused a different result in the proceeding." **Engel**, 304 S.W.3d at 128 (emphasis added). "[A] Missouri Supreme

17

Court interpretation of federal constitutional law constitutes the controlling law within our state until either the Missouri Supreme Court or the United States Supreme Court declares otherwise." ***Doe v. Roman Catholic Diocese of St. Louis***, 311 S.W.3d 818, 823 (Mo.App. 2010). The second prong of Movant's fourth argument has no merit.

For the aforementioned reasons, Movant has failed to demonstrate that the motion court's denial of claim 8(c) was clearly erroneous. Movant's fourth point is denied.

### *Point 5 – No Cumulative Error Finding is not Clearly Erroneous*

Movant's fifth point contends:

> The motion court clearly erred in denying claim 8(h) of the amended motion in derogation of [Movant's] rights to due process of law and to a fair trial under the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 and 18(a) of the Missouri Constitution, in that the cumulative prejudicial effect from [Movant's] claims 8(a), 8(b), and 8(c) demonstrate [Movant] did not receive a fair trial even without deciding whether claims 8(a), 8(b), or 8(c) individually warrant reversal.

We disagree.

With regard to claim 8(h), the motion court quoted ***McDaniel v. State***, 460 S.W.3d 18, 34 (Mo.App. 2014), for the proposition that "[h]aving determined that none of Movant's points amount to reversible error, there can be no reversible error attributable to their cumulative effect." This is a correct statement of the law and, because Movant has failed to demonstrate error with claims 8(a), 8(b), and 8(c), the motion court's application of ***McDaniel*** in this context was not clearly erroneous. Movant's fifth point is denied.

### Decision

The motion court's judgment is affirmed.

GARY W. LYNCH, P.J. – OPINION AUTHOR
NANCY STEFFEN RAHMEYER, J. – CONCURS
WILLIAM W. FRANCIS, JR., J. – CONCURS